## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          )
                                  )
v.                                )     Criminal No. 08-06J
                                  )
PHILLIP CHRISTOPHER CLAYTON       )

Defendant.

## OPINION AND ORDER

This matter comes before the Court on Defendant Phillip Christopher Clayton's Motion to Dismiss Indictment (Doc. No. 49). This matter turns on the constitutionality of the Sex Offender Registration and Notification Act ("SORNA").[1] Mr. Clayton makes several arguments relating to the legitimacy of the federal statute under which he is charged, 18 U.S.C. § 2250(a), which is part of SORNA. The United States responds that Congress and agencies acted within proper constitutional bounds in enacting and implementing SORNA, including its registration provisions and criminal enforcement provision, and therefore its application to convicted sex offenders such as Mr. Clayton is lawful.

After consideration of the parties' arguments, Defendant's Motion to Dismiss will be DENIED.

## I. Background

### A. Standard of Review

A motion to dismiss an indictment is directed only toward the sufficiency of the indictment to charge and offense, and may not be used as a device for a summary trial of the evidence. *See United States v. Sampson*, 371 U.S. 75, 78-79, 83 S. Ct. 173, 9 L. Ed. 2d 136 (1962). For the

---

[1] 42 U.S.C. § 16901, *et seq.*

purposes of deciding a motion to dismiss, the allegations of the Indictment must be taken as true. *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n. 16, 72 S. Ct. 329, 96 L. Ed. 367 (1952). As will be discussed in greater detail *infra*, federal statutes are generally presumed constitutional, and will only be invalidated on a "plain showing" that Congress exceeded its constitutional authority. *See United States v. Morrison*, 529 U.S. 598, 607, 120 S. Ct. 1740, 146 L. Ed. 2d 658 (2000).

## A. Charge

Mr. Clayton is charged with one count of knowingly failing to register or update a registration as required by SORNA, in violation of 18 U.S.C. § 2250(a). The Indictment alleges that in 1992, Mr. Clayton was convicted in California of the crime of Oral Copulation of an Unconscious Victim.[2] The Indictment further alleges that Mr. Clayton thereafter traveled to Pennsylvania, but failed to update his registration between October 1, 2007 and December 31, 2007, as required by SORNA.

## B. Statutory Background

SORNA is the most recent effort by Congress to promote uniformity among state sex offender registries, to address the perceived problem of sex offenders who move between states and evade registration requirements.[3]

Previously, in 1994, Congress addressed the same problem in the Violent Crime Control and Law Enforcement Act. This Act included Title XVII, the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, Pub. L. Nos. 103-322. Title XVII requires the United States Attorney General to develop guidelines to instruct states in developing registration

---

[2]According to the parties' filings, under California law, Mr. Clayton's 1992 conviction requires lifetime registration as a sex offender. In 2006, Clayton was convicted in California of failure to register as a sex offender.

[3]See 152 Cong. Rec. S8012, 8013 (July 20, 2006) (statement of Sen. Orrin Hatch) ("Laws regarding registration for sex offenders have not been consistent from State to State[;] now all states will lock arms and present a unified front in the battle to protect children.")

2

programs for sex offenders. *See* 42 U.S.C. § 14071(a) & (b). Title XVII also directs state officials in various information-sharing efforts with federal law enforcement agencies, such as the Federal Bureau of Investigation. *Id.* The Attorney General's guidelines direct states to develop penalties for those individuals who knowingly failed to register or keep their registration current. 42 U.S.C. § 14071(d). By 1996, all states had enacted such laws, known as Megan's Laws, in some form. *See Smith v. Doe*, 538 U.S. 84, 990, 123 S. Ct. 1140, 115 L. Ed. 2d. 164 (2003).

Pennsylvania enacted its Megan's Law in 1995; under this law, an individual convicted of certain offenses must register with the Pennsylvania State Police, and inform the state police within 48 hours of any changes in residence or employment. 42 Pa. Cons. Stat. § 9795.2(a)(1)-(2). Furthermore, after establishing residence in another state, a sex offender must register within 48 with the new state's law enforcement agency. *Id.* § 9795.2(a)(2.1). Failure to comply with such requirements may be prosecuted under 18 Pa. Cons. Stat. § 4915.

In 2006, Congress passed the Adam Walsh Child Protection and Safety Act of 2006, Pub.L. No. 109-248. The Adam Walsh Act intended "to protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims."[4] Title I of the Act, known as SORNA, intended to establish a "comprehensive national system" for sex offender registration. *See* 42 U.S.C. § 16901, et seq. In particular, SORNA hoped to close the gaps inherent in a network of independent state systems. SORNA Interim Rule, 72 FR 8894.

SORNA may be helpfully divided into two components: the state component and the individual component. As to the state component, SORNA conditions certain federal funds upon

---

[4]Preamble to the Adam Walsh Child Protection and Safety Act, Pub. L. 109-248.

states' compliance with national standards for sex offender registration and enforcement programs. 42 U.S.C. § 16911(10). For instance, to avoid reductions in federal grants, states must implement the requirements of SORNA by July 27, 2009. See 42 U.S.C. §§ 16924 and 16925-16926. Importantly, SORNA does not mandate that any jurisdiction adopt such standards, but rather "encourages" adoption by conditioning 10% of Byrne Grant funding upon substantial compliance. 42 U.S.C. § 16925. SORNA allows jurisdictions until July 2009 to substantially implement the standards. 42. U.S.C. § 16924. It appears to the Court that neither Pennsylvania nor California has yet passed legislation to fully comply with SORNA.[5]

As to individuals, SORNA establishes a national program of sex offender registration, and a new federal crime for failing to register. Section 141(a) of SORNA, codified at 18 U.S.C. § 2250(a), imposes criminal penalties upon persons required to register under SORNA who travel in interstate or foreign commerce and fail to register. 18 U.S.C. § 2250(a) reads as follows:

> (a) In general. Whoever–
> (1) is required to register under the Sex Offender Registration and Notification Act;
> (2) (A) is a sex offender as defined for the purposes of [SORNA] by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
> (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act; shall be fined under this title or imprisoned not more than 10 years, or both.

---

[5]Counsel informs the Court that Pennsylvania has introduced a SORNA compliance-related bill. *See* 2007 Pennsylvania Senate Bill No. 1130, Pennsylvania One Hundred Ninetieth General Assembly - 2007-2008 (Introduced Version November 2, 2007). However, it is the Court's general understanding that numerous states will likely not achieve substantial compliance with SORNA in the near future, given the costs and difficulties in converting and modifying state registration systems.

18 U.S.C. § 2250(a).

The structure of § 2250(a) yields two core classes of sex offenders: 1) those covered under § 2250(a)(2)(A), meaning those who are required to register, were originally convicted under federal law, did not necessarily travel between states, and failed to register; and 2) those covered under § 2250(a)(2)(B), meaning those who are required to register, traveled in interstate commerce, and failed to register. When charging individuals covered under § 2250(a)(2)(B), the government must prove the following three elements: 1) the defendant is required to register under SORNA (42 U.S.C. § 16913); 2) the defendant traveled in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and 3) the defendant knowingly failed to register or update a registration as required by SORNA. 18 U.S.C. § 2250(a).

SORNA also dictates who is required to register under the Act, how to keep this registration current, and other such administrative matters. 42 U.S.C. §§ 16193-16916. In particular, 42 U.S.C. § 16913 directs persons designated as "sex offenders" to, inter alia, "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). The statutory definition of "sex offender" includes citizens convicted under state criminal laws. 42 U.S.C. § 16911.

These underlying registration requirements and procedures are set forth in 42 U.S.C. § 16913, which reads as follows:

> (a) In general
>
> A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

5

(b) Initial registration

The sex offender shall initially register—

(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or

(2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

(c) Keeping the registration current

A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

(d) Initial registration of sex offenders unable to comply with subsection (b)

The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b).

(e) State penalty for failure to comply

Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter.

As implemented, SORNA also applies to persons convicted of offenses occurring before its

enactment. Congress delegated substantial authority in determining the applicability of SORNA's

registration requirements to those convicted of sex crimes prior to its enactment:

The Attorney General shall have the authority to specify the applicability of the requirements of this title to sex offenders convicted before the enactment of this Act or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who

6

are unable to comply with [the three day rule].

42 U.S.C. § 16913(d).

On February 28, 2007, the Attorney General promulgated a rule stating that SORNA shall "apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." 28 C.F.R. § 72.3.

## II. Defendant's Arguments

Mr. Clayton's ably researched and presented arguments are several-fold, and summarized in brief as follows:

1: Congress exceeded its Commerce Clause power in enacting SORNA;

2: SORNA unconstitutionally commandeers state officials' authority, in violation of the Tenth Amendment and principles of federalism;

3: Congress's allowance for the Attorney General to dictate the scope of SORNA's reach violates non-delegation principles;

4: 28 C.F.R. § 72.3, a regulation promulgated by the Attorney General that makes § 2250(a) retroactively applicable to Mr. Clayton, is invalid due to violation of the Administrative Procedure Act;

5. Application of SORNA to Mr. Clayton violates the Due Process Clause;

6. SORNA infringes upon Mr. Clayton's constitutional right to interstate travel; and

7. SORNA violates the Ex Post Facto Clause of the Constitution.

The Court will address each of Defendant's arguments in turn.

## III. Discussion

Having considered the parties' arguments and briefing, and the relevant law, and for the

7

forthcoming reasons, the Court concludes that Defendant's Indictment should not be dismissed.

## A. As Applied to Defendant, 42 U.S.C. § 16913 and 18 U.S.C. § 2250(a) Are Within Congress's Commerce Clause Authority

Defendant argues that Congress did not have a proper source of authority to enact the portions of SORNA directed at individuals, as such provisions are insufficiently connected to interstate commerce. Specifically, Defendant argues that both 42 U.S.C. § 16913 and 18 U.S.C. § 2250(a) are overreaches of Congress' commerce power.

Lacking a general police power,[6] Congress may only pass legislation pursuant to specific grants of constitutional authority.[7] Congress's Commerce Clause power emerges from Article I, § 8 of the Constitution, which provides that "[t]he Congress shall have Power . . . [t]o regulate Commerce with foreign Nations and among the several states." U.S. Const. art. I, § 8, cl. 3.

Where Congress exceeds its constitutional authority in enacting a statute, courts must not give the statute effect; consequently, an action based upon an invalid statute must be dismissed. *United States v. Morrison*, 529 U.S. 598, 604, 120 S. Ct. 1740, 146 L. Ed. 2d 658 (2000); *United States v. Lopez*, 514 U.S. 549, 551, 115 S. Ct. 1624, 131 L. Ed. 2d 626 (1995). In *United States v. Whited*, the Third Circuit explained that where Congress acts under its commerce authority, statutes are entitled to a presumption of validity:

> At the outset, we note that our analysis is to be conducted with the understanding that congressional acts are entitled to a "presumption of constitutionality," and will only be invalidated upon a "plain showing that Congress has exceeded its constitutional

---

[6]See U.S. Const. amend X.

[7]Pursuant to the Constitution, Congress may only act where it is granted a specific source of authority. *See United States v. Lopez*, 514 U.S. 549, 552, 115 S. Ct. 1624, 131 L. Ed. 2d 626 (1995). This requirement, that Congress have a specific source of authority, distinguishes the federal legislative branch from state governments, which have the broad police power.

bounds."[*Morrison*], 529 U.S. at 607, 120 S.Ct. 1740. That presumption is "not a mere polite gesture. It is a deference due to deliberate judgment by constitutional majorities of the two Houses of Congress that an Act is within their delegated power...." United States v. Five Gambling Devices, 346 U.S. 441, 449, 74 S.Ct. 190, 98 L.Ed. 179 (1953). Accordingly, "[a]lthough the judicial branch is the final arbiter of the constitutionality of a statute," we review Congress's determination that it was within its constitutional authority with "substantial deference." United States v. Gregg, 226 F.3d 253, 261 (3d Cir.2000). In the particular context of the Commerce Clause, we have frequently framed our inquiry as the narrow one of whether Congress had a "rational basis" for concluding that the activity it was regulating-here, theft involving the health care industry-was sufficiently related to interstate commerce to support the statute's constitutionality. *See, e.g.*, *United States v. Spinello*, 265 F.3d 150, 153 (3d Cir.2001); *Gregg*, 226 F.3d at 261-62; *see also Hodel v. Virginia Surface Mining & Reclamation Assn.*, 452 U.S. 264, 276, 101 S. Ct. 2352, 69 L. Ed. 2d 1 (1981) (same).

311 F.3d 259, 266-67 (3d Cir. 2002).

## 1. Introduction

Defendant first attempts to make a facial challenge to the constitutionality of § 2250(a), and its imbedded registration requirements, arguing as follows: "Congress lacks the authority to direct individuals convicted of purely local offenses to register as sex offenders. Therefore, Congress cannot constitutionally require Mr. Clayton, who was convicted of a purely local offense, to register under SORNA . . . . Because the first element of § 2250 cannot be met, the Indictment should be dismissed." Doc. No. 49, p. 9. For the following reasons, the Court disagrees with Defendant's contentions, and finds that as applied to Defendant,[8] both SORNA's registration requirements and

---

[8] The Court acknowledges that different constitutional questions may be presented to the group of Defendants classified under § 2250(a)(2)(A); because Defendant does not fall within that group, this Court will not consider those issues. Furthermore, Defendant argues about the registration requirement's problematic nature where applied to sex offenders convicted only of state offenses who never leave their home state. Such facial challenges are not favored. In *Sabri v. United States*, the Supreme Court explained that a defendant will face substantial difficulty in arguing that because a statute would be unenforceable as applied to someone else, it should also not be enforced as to the defendant. 541 U.S. 600, 608-10, 121 S. Ct. 1941, 158 L. Ed. 2d 891 (2004); *see also Ohio v. Akron Center for Reproductive Health*, 497

9

the enforcement provision of § 2250(a), are constitutional. The Court will first examine the constitutionality of § 2250(a), and then examine the constitutionality of the related registration requirements.

## 2. Discussion

Within the long and fluctuating history of Commerce Clause jurisprudence, the relatively recent cases of *Lopez* and *Morrison* show that there are limits to Congressional authority under the Commerce Clause, at least when dealing with certain non-economic matters.[9] The fundamental question in this matter is whether SORNA exceeds those relatively broad limits. *Morrison* labeled three categories, each discussed in *Lopez*, where Congress may regulate under its Commerce Clause authority. *Morrison*, 529 U.S. at 608-09 (quoting Lopez, 514 U.S. at 558). Congress may regulate (1) the use of the channels of interstate commerce, such as interstate highways, the mail or air traffic routes; (2) instrumentalities of interstate commerce, or persons or things in interstate commerce; and (3) those activities that have a substantial effect on interstate commerce. *Id.* at 609.

Therefore, the Court will consider whether § 2250(a) fits within one of the three *Lopez* categories. While the first category, channels of interstate commerce, does not appear to be relevant,[10] the Court believes that sufficient arguments exist, under either the second or third categories, to defeat Defendant's challenge to the presumption that SORNA is constitutional.

---

U.S. 502, 513, 110 S. Ct. 2972, 2981, 111 L. Ed. 2d 405 (1990). *Sabri* explained that facial challenges are disfavored because they "invite judgments on fact-poor records" and "call for relaxing familiar requirements of standing that the law would be unconstitutionally applied to different parties and different circumstances from those at hand." 541 U.S. at 609.

[9]The Court's most recent opinion in this area, *Gonzales v. Raich*, 545 U.S. 1, 125 S. Ct. 2195, 162 L. Ed. 2d 1 (2005), indicated that Congress has broad commerce authority to regulate activities that, in the aggregate, affect interstate commerce.

[10] However, some courts have found § 2250(a) to be proper under this category. *See, e.g., United States v. Ambert*, 2009 WL 564677 (11th Cir. Mar. 6, 2009); *United States v. May, 535 F.3d 912* (8th Cir. 2008).

The second category, instrumentalities of interstate commerce, allows Congress to regulate persons in interstate commerce. *Lopez*, 514 U.S. at 558 ("Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities."). Thus, *Lopez* expressly indicated that instrumentalities of commerce includes "persons or things in interstate commerce." 514 U.S. at 558, 115 S. Ct. 1624. Thus, where sex offenders travel in interstate commerce, they are instrumentalities of interstate commerce; by regulating such persons, Congress therefore acts under its Commerce Clause power to regulate instrumentalities of commerce. The Court recognizes that simply applying the language of *Lopez* may give short treatment to the detailed and lengthy history of Commerce Clause jurisprudence preceding *Lopez*;[11] nonetheless, the Court finds that a simple application of the clear language in *Lopez* conforms to a common-sense understanding of the proper scope of Congress's commerce power.

Defendant responds that it is not so much the travel of sex offenders that is being regulated but their state registrations. The Court acknowledges some sense in this argument, but notes the express language of *Lopez*: "even though the threat may come only from intrastate activities." *Lopez*, 514 U.S. at 558. Furthermore, the purpose of SORNA is to address those problems with registration of sex offenders that are caused by the interstate travel of such offenders. The point is not, as Defendant contends, that once such offenders travel, they are forever subjected to federal regulation; rather, the focal point of SORNA is to address specific problems that flow as a direct consequence of a sex offender's travel between jurisdictions. While acknowledging the trenchant critiques of this

---

[11]*See United States v. Myers*, 591 F. Supp. 2d 1312, 1341 (Dec. 9, 2008).

position,[12] the Court believes that this statute amounts to a constitutionally allowable regulation of persons in interstate commerce, given the evident Congressional intent under § 2250(a)(2)(B) to reach only those who travel between states.

Defendant criticizes this interstate element at length, because it does not require that the traveling occur in direct connection with the failure to register. In other words, Defendant emphasizes the weakness of any link between the act of traveling in interstate commerce and the actual failure to register. Defendant's argument concludes that if the Court were to uphold § 2250(a) on the basis of its interstate travel requirement, Congress could then simply federalize any local offense by adding an unconnected travel element. Instead, Defendant argues, federal courts should require that where Congress uses its commerce clause authority, a proximate nexus must exist between the criminal activity and the interstate travel. However, despite Defendant's contentions to the contrary, the Court finds that § 2250(a) properly focuses upon the movement of persons in interstate commerce, and functions to regulate the movement of sex offenders in interstate commerce. The Court need not apply an overly narrow definition of the word "in", as doing so would, in this matter, lead to a result inconsistent with the common-sense purpose of the statute. Here, a sex offender's interstate travel is proximate to his registration requirements, and that proximity has both temporal and causal elements.

The Court believes that the interstate travel requirement of § 2250(a)(2)(B) properly limits its scope, and sufficiently distinguishes it from the at-issue statutes in *Lopez* and *Morrison*. While discussing the statutes in the context of the third *Lopez* category, the Supreme Court criticized the failure to include an express jurisdictional element. *See, e.g.*, *Morrison*, 529 U.S. at 612. Likely in

---

[12]*See, e.g.*, *United States v. Myers*, 591 F. Supp. 2d 1312, 1341-44 (Dec. 9, 2008).

direct response to that language, § 2250(a) includes an express interstate travel element. As to individuals such as Defendant Clayton, to successfully prosecute a violation of § 2250(a), the government must offer proof of travel between states. While some distinguishing features obviously exist as to § 2250(a) and the Travel Act[13] or Mann Act,[14] the rationale behind the regulations is sufficiently similar.

Defendant claims that upholding this law on the basis of this nexus to interstate commerce would lead to absurd outcomes. According to Defendant, if the Court upholds this legislation, then Congress will be able to federalize any crime merely by including the requirement that the defendant traveled in interstate commerce at some point. Along this line of reasoning, Defendant suggests that to withstand Commerce Clause scrutiny, § 2250(a) would need to require that the Defendant traveled in interstate commerce while having the intent to fail to register.

While Defendant's points are interesting, his overstatements and hypotheticals signal a fatal problem in his contentions. Obviously, regardless of any decision this Court makes, the Commerce Clause retains some limits as a source of authority, as shown in *Lopez* and *Morrison*. This Court neither intends nor has the authority to announce a rule of law that would somehow enable Congress to regulate all intrastate criminal activity. As any first-year law student knows, constitutional law is a murky topic, where easily applied bright-line rules, such as that hypothesized by the Defendant, do not exist; rather, constitutional law generally, and Commerce Clause jurisprudence in particular, are fields of nuance that demand specific consideration and careful analysis of the individual situation. Therefore, the Court does not credit Defendant's arguments about what might happen in

[13]18 U.S.C. § 1952.

[14]18 U.S.C. § 2421.

13

the future, should the case-specific reasoning applied in this matter be stretched into a rule to be applied, without proper analysis, in all matters.

Similarly lacking in persuasive value is Defendant's contention that the only way the statute could be valid is if it required that the Defendant's travel in interstate commerce with the intent to fail to register. The Court can only imagine the difficulties of proof that would attend such a requirement; obviously, the purpose of this statute is to prevent people from moving around the country and utilizing the consequential anonymity within their new locale to evade registration requirements. Notably, SORNA's registration requirements, as applied to a certain tier of sex offenders, require that such offenders register within three days of traveling in interstate commerce. This remarkable proximity in time is one way in which the statute demonstrates the particularized and individual way in which its regulatory goal, the registration of allegedly dangerous sex offenders, is closely linked to such individuals' interstate travel.

Moreover, the precise reason for the person's traveling seems rather beside the point, from both a pragmatic and constitutional perspective. In other areas, a meticulously defined connection between intent and the interstate element may be appropriate; in this arena, it is neither sensical nor necessary. In short, constitutionality analyses call for inductive reasoning, and yet Defendant's reasoning is overly deductive; consequently his arguments fail.

The third category allows Congress to regulate activities that have a substantial effect on interstate commerce. Obviously, the breadth of this category has fluctuated widely over the past century. *Lopez* and *Morrison* enumerated the following factors that may helpfully be used in determining whether a matter substantially affects interstate commerce: (1) whether the regulated activity has an economic character; (2) whether the statute has a jurisdictional element; (3) the

14

existence of congressional findings indicating that the statute is a valid exercise of Congress' Commerce Clause power; and (4) the extent of the relationship between the regulated activity and its effects on commerce.

At first glance, this category may not appear applicable. However, the Supreme Court's expansive language in *Raich* suggests room for persuasive arguments that SORNA regulates activities that have a substantial effect upon interstate commerce. *See Gonzales v. Raich*, 545 U.S. 1, 15-18, 125 S. Ct. 2195, 162 L. Ed. 2d 1 (2005) ("As we stated in *Wickard*, 'even if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce.'"). Such language is particularly important given that *Raich* is the most recent Supreme Court pronouncement in this arena. While comparisons may obviously be made to the statutes at issue in *Morrison* and *Raich*, this Court also notes that creative arguments could be made showing that a rational basis exists for concluding that the activity regulated by SORNA affects commerce. *See Raich*, 545 U.S. at 22 (explaining that the Court "need not determine whether respondents' activities, taken in the aggregate, substantially affect interstate commerce in fact, but only whether a 'rational basis' exists for so concluding."). Second, as discussed above, § 2250(a) contains a jurisdictional element. While the third and fourth factors present stumbling blocks, this Court nonetheless believes that colorable arguments exist under these factors that could support the common-sense notion that SORNA is an appropriate exercise of federal jurisdiction.

## 2. Whether Registration Requirements of 42 U.S.C. § 16913 Are Constitutional

As stated above, Defendant challenges the applicability of 42 U.S.C. § 16913 generally, and also to those, like himself who engaged in interstate travel. Defendant argues that Congress lacks

15

the authority to dictate that individuals convicted of state offenses must register upon moving to a new state. If this is the case, Congress would not be able to require Mr. Clayton to register under SORNA.

The government's briefing insists that challenging § 16913, essentially referenced in the first element of § 2250(a) as a shortcut to lengthier definitions, is akin to challenging Congress' authority to establish a definition. The government characterizes Defendant's attempt to "divide and conquer" as a "*reductio ad absurdum* that must be rejected."

For the most part, the Court agrees with the government, and finds that there need not be two separate analyses, one for SORNA's registration and another for SORNA's penalty provisions. Recently, Judge Christopher C. Conner of the Middle District of Pennsylvania also rejected the need to conduct two separate analysis, explaining as follows:

> Both provisions 'are components of a symbiotic statutory scheme in which there is no criminal penalty unless there is a failure to register and, conversely, failure to register cannot be enforced without a criminal penalty.' . . . . Considering SORNA as a whole, it is abundantly clear that the Act does not punish sex offenders for the *intrastate* failure to register. To the contrary, the federal government gains criminal jurisdiction only when a person required to register under SORNA travels in interstate commerce.

*United States v. Shenandoah*, 572 F. Supp. 2d 566, 577 n. 7 (M.D. Pa. 2008). The Court agrees with Judge Conner's framework of analysis; given that the registration provisions of SORNA can never be enforced, other than through § 2250(a), the Court finds it incorrect to specifically assess the registration provisions out of the context of the whole Act.

Recognizing the reasonable difference of opinion in this area, the Court also asserts two alternative bases for upholding SORNA's registration provisions: first, pursuant to the necessary and

16

proper clause; and second, pursuant to a separate commerce clause analysis.

SORNA's registration provisions could be upheld pursuant to Congress's necessary and proper clause. Congress has the power to pass those laws necessary and proper to carrying out its commerce clause power. *See Raich*, 545 U.S. 1, 34 (2005) (Scalia, J., concurring in the judgment) ("Congress's regulatory authority over intrastate activities that are not themselves part of interstate commerce (including activities that have a substantial effect on interstate commerce) derives from the Necessary and Proper Clause."). In 1819, Chief Justice Marshall explained: "Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional." *McCullough v. Maryland*, 17 U.S. 316, 421 (1819). Congress may regulate even intrastate activity where the means employed by Congress are "reasonably adapted" toward a legitimate end pursued under its commerce power. *See United States v. Darby*, 312 U.S. 100, 121, 61 S. Ct. 451, 85 L. Ed. 609 (1941).

In short, as found in recent analyses by the Eleventh[15] and Eighth Circuits,[16] SORNA's registration requirements do not focus solely upon an individual's registration; rather, the primary goal of the legislation is to regulate the interstate movement of sex offenders. These courts found, upon analysis of the statutes, that the registration provisions emphasized an interstate focus. In particular, the Eleventh and Eighth Circuits noted that § 16913 does not contain a federal enforcement provision targeted against individuals who do not travel between states, as § 2250(a)

---

[15] *United States v. Ambert*, 2009 WL 564677 (11th Cir. Mar. 6, 2009).

[16] *United States v. Howell*, 552 F.3d 709 (8th Cir. 2009).

requires that a defendant travel between states and consequently fail to register.[17]

Second, SORNA's registration provisions could also likely withstand commerce clause analysis upon acceptance of the theory that a sex offender's failure to register in one state substantially affects interstate commerce; such a resolution would obviously need to be distinguished from the Supreme Court's holdings in *Lopez* and *Morrison*, but doing so, as discussed above, is facilitated under the broad language of *Raich*.

For all of the above reasons, SORNA, including its registration requirements and criminal enforcement provision, is a constitutional exercise of Congressional authority. Speaking generally, this Court does not believe that the enactment of SORNA invokes the concern initially expressed in Lopez that ". . . Congress might use the Commerce Clause to completely obliterate the Constitution's distinction between national and local authority . . . ." *Morrison*, 529 U.S. at 615 (citing *Lopez*, 514 U.S. at 564). Consequently, the Indictment should not be dismissed on Commerce Clause grounds.

## B. SORNA Does Not Unconstitutionally Force State Officials to Enforce a Federal Regulatory Scheme

### 1. Introduction

The Tenth Amendment provides that the "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. The federal government may not commandeer state legislative or regulatory operations; however, the federal government may condition federal funds upon a state's compliance with federal objectives. *See Printz v. United States*, 521 U.S. 898, 935, 117 S. Ct. 2365,

---

[17]This reasoning appears to only apply to those offenders classified under § 2250(a)(2)(B); however, Defendant Clayton falls within that class.

138 L. Ed. 2d 914 (1997).

Defendant argues that SORNA violates the Tenth Amendment as an unconstitutional encroachment by the federal government on state sovereignty. Doc. No. 49, pp. 31-33. Defendant acknowledges Congress's right to exercise its spending power to persuade states to accept such registrations. However, Defendant argues that because Pennsylvania has not yet adopted SORNA's provision, it would violate the Tenth Amendment for Congress to force state officials to accept registrations under SORNA.

Defendant therefore argues that SORNA's registration requirements are invalid under the Tenth Amendment and that consequently, the Indictment should be dismissed. The government, while first noting that Clayton does not have standing to make such a challenge, further explains that SORNA merely sets national standards and then encourages states to adopt such standards through its lawful spending power. Doc. No. 54, pp. 29-31.

## 2. Analysis

The Tenth Amendment prohibits the federal government from "commandeering" state officials into enacting or administering federal law. *Printz*, 521 U.S. at 935 (1997) (striking down a federal law requiring local law enforcement officials to conduct background checks of prospective handgun purchasers); *see also New York v. United States*, 505 U.S. 144, 112 S. Ct. 2408, 120 L. Ed. 2d 120 (1992) (finding that Congress did not have power to compel the states to enact a federal program regulating the disposal of toxic waste). *Printz* explained: "The Federal Government may neither issue directives requiring the states to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program." *Printz*, 521 U.S. at 935.

19

However, as Defendant himself readily acknowledges, Congress may exercise its spending power to persuade states to accept the registrations of individual sex offenders. Numerous cases establish that Congress may attach conditions upon the receipt of federal funds, in order to advance certain policy objectives. *See, e.g., South Dakota v. Dole*, 483 U.S. 203, 206, 107 S. Ct. 2793, 97 L. Ed. 2d 171 (1987).

Defendant further argues that neither California nor Pennsylvania has implemented SORNA's requirements. Defendant's consequent claim appears to be that since Pennsylvania and California have not accepted Congress' invitation to comply with SORNA, "it is a violation of the Tenth Amendment for Congress to force state officials to accept registrations under SORNA." Doc. No. 49, p. 33. However, both Pennsylvania and California had state registration systems prior to the enactment of SORNA. In such a scenario, the registration requirements referenced by § 2250(a) (valid under the commerce clause as detailed above) simply require certain sex offenders to register with the appropriate pre-existing state system. In other words, the registration provisions of SORNA do not require the states to do anything additional. Therefore, neither Pennsylvania nor California was "commandeered", as each already had a registration system. Section 2250(a), while working in conjunction with SORNA's registration requirements, adds a federal penalty applicable only to individual offenders who fail to abide by state registration laws.

In short, the Court does not accept Defendant's attempt to analogize the law enforcement officials who run state sex offender registries to the local law enforcement official in *Printz*. SORNA does not require a state to comply with its recommendations regarding a registration program; instead, Pennsylvania and other states can simply choose not to implement SORNA. Pennsylvania may make the choice to not fully comply with SORNA's standards for state

20

registration systems, and consequently accepting a reduced amount of federal funding. This would not eliminate Pennsylvania's preexisting ability to require that sex offenders, such as Mr. Clayton, register under its own regime. Consequently, the Court finds that SORNA in no way violates the Tenth Amendment.

## C. SORNA Does Not Violate the Non-Delegation Doctrine

### 1. Introduction

SORNA delegated two areas of authority to the Attorney General: first, the authority to specify the applicability of the Act to sex offenders convicted before July 27, 2006, *see* 42 U.S.C. § 16913; and second, the authority to "prescribe rules for the notification of sex offenders who cannot be registered in accordance with subsection (a)." 42 U.S.C. § 16917(b). On February 28, 2007, the Attorney General issued an interim rule that makes it "indisputably clear that SORNA applies to sex offenders (as the Act defines that term) regardless of when they were convicted." SORNA Interim Rule, 72 FR 8894.

Defendant argues that the effect of these delegations was to empower the Attorney General to legislate the scope of the Act's retrospective reach, in violation of constitutional non-delegation principles. Doc. No. 49, pp. 33-37. Defendant criticizes the propriety of delegating the reach of a criminal statute to the Executive's chief law enforcement officer. Furthermore, Defendant argues that the Attorney General was completely free to decide how far back the registration requirements should be extended. Defendant emphasizes that such delegation is particularly troubling because retrospective legislation is disfavored.

The government responds at length, disagreeing with Defendant's broad interpretation of Section 16193(d); among other contentions, the government argues that under any statutory

21

interpretation, the delegation to the Attorney General was proper and constitutional. Doc. No. 54, pp. 31-43.

## 2. Analysis

### a. Non-Delegation Principle

The non-delegation principle dictates that Congress cannot delegate its legislative authority to another branch of the government. See *A.L.A. Schechter Poultry Corp. v. United* States, 295 U.S. 495, 529, 55 S. Ct. 837, 79 L. Ed. 1570 (1935) ("Congress is not permitted to abdicate or to transfer to others the essential legislative functions with which it is thus vested."). This doctrine is premised upon the constitutional ideal of the separation of powers between the three branches of government. *See Mistretta v. United States*, 488 U.S. 361, 380-81, 109 S. Ct. 647, 102 L. Ed. 2d 714 (1989) (describing the separation of powers as essential to the preservation of liberty).

However, given today's complicated administrative state, Congress simply doesn't have the expertise or capacity to lay out guidelines for proper implementation of all of its legislation. *Id.* at 372 ("[O]ur jurisprudence has been driven by a practical understanding that in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives.) Therefore, the Supreme Court has held that it is constitutionally permissible for Congress to seek the assistance of another branch of government, so long as Congress guides the discretion of that entity by providing an "intelligible principle." *Touby v. United States*, 500 U.S. 160, 165, 111 S. Ct. 1752, 114 L. Ed. 2d 219 (1991).

In enacting SORNA, Congress provided a clear explication of its goal: to protect "the public from sex offenders and offenders against children" through the establishment of a "comprehensive

national system for the registration of [sex] offenders." 42 U.S.C. § 16901. The government argues that the enunciation of this goal, along with the plain statutory language of SORNA, are satisfactory intelligible principles to guide the Attorney General's implementation of SORNA; this Court agrees.

While resolution of this issue depends in part upon a court's construction of § 16913(d), this Court finds, following consideration of the options presented by the parties, that regardless of the construction, SORNA's delegation was proper, in that it espoused a clear policy (protecting the public) and provided defined boundaries to guide the Attorney General's discretion over a certain matter. Furthermore, given the simple and evident purpose of SORNA, the Court finds that the Congress sufficiently indicated its intent in making the statute applicable to those previously convicted of sex offenders, and the Attorney General exercised suitable discretion in clarifying the implementation.

## D. The Attorney General's Interim Regulation Is Not Invalid for Failure to Comply with APA

### 1. Introduction

Congress delegated authority to the Attorney General to establish rules for the application of SORNA's registration requirements to individuals convicted before July 27, 2006. 42 U.S.C. § 16913(d). On February 28, 2007, the Attorney General published an interim regulation, deemed effective immediately, stating that SORNA shall "apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." 28 C.F.R. § 72.3; SORNA Interim Rule, 72 FR 8894.

Defendant argues that this regulation was promulgated in violation of the Administrative Procedures Act and is consequently invalid. Furthermore, Defendant argues that good cause for skipping the notice and comment period did not exist, in part because interim regulation served no

23

pressing public purpose other than facilitating the prosecution of individuals. Doc. No. 49, pp. 37-40.

The government responds that the decision to make the rule effective immediately was supported by good cause. Doc. No. 54, pp. 43-46.

### 2. Analysis

As part of providing appropriate due process, federal agencies must publish advance notice of certain proposed rules and allow appropriate time for public comment. APA, 5 U.S.C. § 533(d). However, an agency may bypass this requirement "for good cause." *Id.* § 553(b)(3)(B). "Good cause" exists when affording notice and soliciting comments is "impracticable, unnecessary, or contrary to the public interest." *Id.* The Third Circuit directs that this "good cause" exception should be narrowly construed. *Nat. Res. Def. Council, Inc. v. E.P.A.*, 683 F.2d 752, 764 (3d Cir. 1982) (citations omitted). Where an agency relies upon the good cause exemption, a reviewing court must examine closely proffered rationales for elimination of public procedures. *Id.* at 764.

The Attorney General stated the following reasons for utilizing the good cause exemption:

> [t]he immediate effectiveness of this rule is necessary to eliminate any possible uncertainty about the applicability of the Act's requirements–and related means of enforcement, including criminal liability under 18 U.S.C. § 2250 for sex offenders who knowingly fail to register as required–to sex offenders whose predicate convictions predate the enactment of SORNA. Delay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions. The resulting practical dangers include the commission of additional sexual assaults and child sex abused or exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to greater difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA. This would thwart the legislative objective of "protect[ing] the public from sex offenders and offenders against children" by establishing a

24

"comprehensive national system for the registration of those offenders," SORNA § 102, because a substantial class of sex offenders could evade the Act's registration requirements and enforcement mechanisms during the pendencey of a proposed rule and delay in the effectiveness of a final rule.

SORNA Interim Rule, 72 FR 8894.

Upon consideration of this issue, the Court finds that the need to immediately clarify the applicability of SORNA to previously convicted sex offenders constitutes good cause. In similarly finding that good cause existed, Judge Quarles of the District of Maryland explained:

> The Interim Order specified that the rule would become immediately effective because prior public notice would be contrary to the public interest. See 72 Fed.Reg. 8897. The DOJ justification for immediate implementation was a need for legal certainty about SORNA's retroactive application to pre-SORNA convicted offenders and a concern for public safety that these offenders be registered as quickly as possible. *Id.* at 8896. Delaying implementation of the Interim Order to meet the formal rulemaking requirements of the APA would be contrary to the public interest. The DOJ's valid concern for public safety, legal certainty, and swift implementation of the rule was adequately justified in its interim order. Moreover, DOJ has since issued proposed guidelines that are open to the formal public notice and comment review period. The Attorney General demonstrated good cause for failing to comply with the strictures of the APA, therefore, the Interim Order was valid.

*United States v. Gould*, 526 F. Supp. 2d 538, 546 (D. Md. 2007).

Similarly, this Court concludes that the Interim Rule in question addresses a very specific subject, and the Attorney General had clear statutory authority to promulgate the rule; furthermore, the Department of Justice has since allowed for proper public comment in related rulemaking. Therefore, the Court finds that good cause existed, and therefore Defendant's argument fails.

## E. Defendant's Due Process Concerns Do Not Currently Justify Dismissal of Indictment

### 1. Introduction

The Fifth Amendment establishes the "[n]o person . . . shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Mr. Clayton is obviously entitled to due process because he is threatened with a substantial loss of property or liberty, in that the possible punishments available under § 2250(a) include a fine and/or maximum imprisonment of 10 years. The Supreme Court explained that the Fifth Amendment's due process clause encompasses principles of notice, fair warning, and foreseeability, particularly in the context of criminal penalties. *Rogers v. Tennessee*, 532 U.S. 451, 460, 121 S. Ct. 1693, 149 L. Ed. 2d 697 (2001).

### 2. Parties' Arguments

Defendant argues that the fair notice requirements of the due process clause do not permit his prosecution under § 2250(a), because his California conviction took place prior to SORNA's enactment, and because he had no notice or knowledge of SORNA's reporting requirements. Doc. No. 49, pp. 40-43. Additionally, Defendant argues: 1) that it is impossible for him to register under SORNA because neither California nor Pennsylvania has implemented SORNA's registration requirements; and 2) because neither California nor Pennsylvania had implemented SORNA systems, he could not have been on notice of SORNA's requirements when he was convicted in 1992 or during the dates alleged in the Indictment (between October 1, 2007 and December 31, 2007).

Furthermore, Defendant avers that while both California and Pennsylvania have sex offender registries, critical differences exist between the current Pennsylvania and California laws, and the more onerous punishments under SORNA. Therefore, Defendant argues that any obligation Mr.

Clayton may have to register with a non-SORNA sex offender registry should not be equated with a duty to register under SORNA. Defendant closes his argument by stating that it violates due process to hold Mr. Clayton accountable for not doing that which was impossible.

In response, the government asserts that prosecution of Mr. Clayton conforms with all due process requirements. Doc. No. 54, pp. 46-52. First, the government oddly argues that "Section 2250 only requires a knowing failure to register, not a noticed one." Second, the government asserts that Clayton received notification of his obligation to register under California law, and that knowledge of his registration obligations under state law sufficiently establishes a knowing failure to register under Section 2250(a). Third, the government argues that Mr. Clayton misunderstands SORNA's notification standard for jurisdictions.

### 3. Background

As discussed above, Congress delegated to the Attorney General the authority to specify the retroactive applicability of SORNA to both (a) those who were "convicted before July 27, 2006," and (b) those who were "convicted before . . . its implementation in a particular jurisdiction." 42 U.S.C. §§ 16913(d). The Attorney General subsequently issued a regulation providing that SORNA is applicable to those convicted before July 27, 2006. 28 C.F.R. § 72.3.

According to the parties' briefing, California and Pennsylvania have not yet implemented SORNA. According to the Attorney General's SMART Guidelines, a jurisdiction has not implemented SORNA until it has (1) "carrie[d] out the requirements of SORNA as interpreted and explained in these Guidelines," and (2) the SMART Office has determined that it has done so. 72 Fed. Reg. at 30213-30214.

27

## 4. Analysis

### a. Defendant's Compliance with SORNA Requirements was Not Impossible

The Court first addresses Defendant's contention that because neither Pennsylvania nor California has implemented SORNA's registration requirements, he could not have possibly registered under SORNA in Pennsylvania, where he was allegedly present from on or about October 1, 2007 to December 31, 2007.

One of the elements of the charged crime is that the defendant "knowingly fails to register or update a registration as required by [SORNA]. 18 U.S.C. § 2250(a)(3). Defendant's facially compelling argument is that if this element means what it says, and SORNA's requirements cannot be met in his case, then he cannot be prosecuted. However, SORNA's actual registration requirement definitively resolves this matter: "A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). Thus, in order to comply with SORNA, Mr. Clayton needed only to have registered in Pennsylvania pursuant to Pennsylvania's laws and procedures. The key here is that SORNA merely requires registration, not a particular sort of registration. At the relevant time, Pennsylvania had a registration system in place, and Defendant could have registered under that regime; therefore, Defendant's argument fails. While SORNA places additional obligations upon Defendant to re-register once Pennsylvania fully implements SORNA, such obligation is in addition to the default and original requirement to be registered with the state. *See* 72 Fed Reg. 30,218, 30, 228.

Essentially, Defendant has not persuaded the Court as to why a convicted sex offender's registration obligations would appear or vanish on the timing of a particular jurisdiction's

compliance with § 16917; instead, Defendant would need to show that compliance with Pennsylvania's sex offender registration system in existence at the relevant time period was somehow i mpossible. Numerous other cases, assessing this issue similarly, provide strong persuasive evidence of the propriety of this result.[18]

Defendant emphasizes the significance of *Lambert v. California*, where the Supreme Court invalidated a prosecution for failure to register as a felon where the defendant had no notice or knowledge of the requirement. 355 U.S. 225, 78 S. Ct. 240, 2 L. Ed. 2d 228 (1957). *Lambert* explained:

> Engrained in our concept of due process is the requirement of notice. Notice is sometimes essential so that the citizen has the chance to defend charges. Notice is required before property interests are disturbed, before assessments are made, before penalties are assessed. Notice is required in a myriad of situations, where a penalty or forfeiture might be suffered for mere failure to act.

*Id.* at 228. *Lambert* viewed due process as a check on the jurisprudence that ignorance of the law is no excuse. *Id.* ("The rule that 'ignorance of the law will not excuse is deep in our law . . . as is the principle that of all the powers of local government, the police power is 'one of the least limitable.' . . . On the other hand, due process places some limits on its exercise.") (citations removed). *Lambert* emphasized at length the unfairness that emerged from prosecuting a defendant who "on first becoming aware of her duty to register was given no opportunity to comply with the law and avoid its penalty, even though her default was entirely innocent." *Id.* at 229.

For certain defendants in § 2250(a) prosecutions, it appears that the precedential *Lambert* opinion may present a compelling case for finding that like prosecution under the California statute

---

[18]*See, e.g.*, *United States v. Ditomasso*, 552 F. Supp. 2d 233 (D.R.I. 2008); *United States v. Gould*, 526 F. Supp. 2d 538 (D. Md. 2007), *United States v. Villagomez*, 2008 WL 918639 (W.D. Okla. 2007).

at issue, prosecution under § 2250(a) also violates due process. Furthermore, it may be a mistake to reduce this issue to a simple determination that "ignorance of the law is no excuse", given that failing to register is a relatively passive action. By common sense standards, a different due process calculus must apply to a federal statute that punishes essentially passive failures to act. In other words, a statute that essentially punishes a failure to act will likely require an increased showing of notice and awareness than a statute that punishes bank robbery.

However, the specifics of Mr. Clayton's prosecution do not appear to invoke substantial notice problems, and his situation is sufficiently distinguished from *Lambert*. First, from a timing perspective, Mr. Clayton's arrest occurred well after SORNA's enactment and well after the Attorney General's interim rule establishing the applicability of the statute to Mr. Clayton.

In *Lambert*, the Court assumed that the individual did not have any actual notice, because the trial court excluded the individual's offer of proof on that defense. *Id.* at 227 n.1. The government seizes upon this distinction in an attempt to narrow the *Lambert* holding; the Court disagrees that *Lambert* is as marginalized as the government suggests. However, the Court acknowledges that the Defendant in *Lambert* was presumed to have no notice whatsoever of any registration obligations, which is a substantially different situation from that presented in this case. Furthermore, unlike the statute at issue in *Lambert*, § 2250(a) contains a mens rea requirement ("knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act"), meaning that at trial, the government will be required to affirmatively prove that Mr. Clayton had the specified *mens rea* requirement. While proving a knowing failure to register should not be conflated with a showing of proper notice, the two issues will largely turn on similar facts.

At trial, Defendant Clayton will have a full and complete opportunity to challenge any

30

offered proof of this *mens rea* element, and should such proof also show that notice was somehow inadequate, then the Court will again address this due process issue, resolution of which seems incapable of determination prior to the trial, as it is dependent upon the facts of the general matter. *See United States v. Conley, 859* F. Supp. 909, 927-28 (W.D. Pa. 1994) (explaining that certain defenses are capable of pretrial determination only if "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense."); *see also United States v. Gulf Oil Corp.*, 408 F. Supp. 450, 460-62 (W.D. Pa. 1975). As noted above, Defendant may have difficulty showing inadequate notice because of the time frame alleged in the Indictment; furthermore, the statute's *mens rea* requirement seems to account for the passive action problem. The Court further acknowledges that the government and Defendant argue in their briefs as to whether the knowledge of registration obligations under state law may be sufficient to establish a knowing failure to register under Section 2250.[19] Numerous courts appear to have found that notice of a defendant's obligations under state law constitutes adequate constructive notice as to SORNA, at least sufficiently so to satisfy due process requirements; however, this Court is currently unable to assess this issue. At this stage in this matter, the Court finds such arguments to be premature. Therefore, at this time, the Indictment shall not be dismissed on grounds of due process; however, as stated, if additional concerns arise following the factual presentations at trial, the Court will re-examine the issue.

---

[19]*See United States v. Hinckley*, 440 F.3d 926, 938 ("[M]ajority of courts have concluded that notice of a defendant's obligations under state law is sufficient to satisfy the Due Process Clause's requirements").

## F. SORNA Does Not Impermissibly Infringe Upon Defendant's Right to Travel

### 1. Introduction

Defendant next argues that applying § 2250(a) to Mr. Clayton impermissibly infringes upon his constitutional right to travel. Doc. No. 49, pp. 44-46. Defendant argues that this prosecution violates his right to travel because it essentially punishes him for traveling to another state, even if the travel is not for the purpose of furthering any illegal activity. This argument presumes that § 2250(a) does not require a nexus between travel and illegal activity, Defendant further argues that SORNA subjects sex offenders who travel to another state to a harsher penalty than sex offenders who remain in one state.

The government responds that this claim lacks merit and should be rejected, because any burden inflicted by § 2250(a) on the right to travel is not unreasonable. Doc. No. 54, pp. 54-56.

### 2. Discussion

Supreme Court jurisprudence has long established that a citizen's right to interstate travel is fundamental. *Saenz v. Roe*, 526 U.S. 489 (1999) ("'[T]he constitutional right to travel from one State to another' is firmly embedded in our jurisprudence." *Id.*(quoting *United States v. Guest*, 383 U.S. 745, 757 (1966)). These decisions reflect and honor America's history as a refuge for those escaping oppressive social or political climates. *See* John Hart Ely, *Democracy and Distrust: A Theory of Judicial Review* 178-79 (1980).

Cases reference different constitutional bases for the right to travel, including as follows: "general constitutional principles",[20] the Privileges and Immunities Clause of Article IV, § 2 of the

---

[20]*See, e.g.*, *United States v. Guest*, 383 U.S. 745, 86 S. Ct. 1170, 16 L. Ed. 2d 239 (1966).

Constitution,[21] the Privileges or Immunities Clause of the Fourteenth Amendment,[22] and the Due Process Clause of the Fifth Amendment.[23]

In *Saenz v. Roe*, the Supreme Court struck down a California law that limited welfare benefits for new residents. 526 U.S. 489, 119 S. Ct. 1518, 143 L. Ed. 2d 689 (1999). The Supreme Court held that the Constitution protects the rights of United States citizens to choose where they live and not be treated in a different fashion than long-term residents. *Id.* This right to travel "protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." *Id.* at 500.

In several cases examining durational residency requirements, the Supreme Court has struck down state statutes that unreasonably burden the right to travel.[24] In dicta, the Court in *Maher v. Roe*, explained: "cases involving the right to travel have consistently held that statutes penalizing the fundamental right to travel must pass muster under the compelling-state-interest test, irrespective of whether the statutes actually deter travel." *Maher v. Roe*, 432 U.S. 464, 488 (1977) (citing cases).

Most right to travel cases, including the only relevant case cited in Defendant's briefing, involve the issue of the legitimacy of a particular state statute that impermissibly treats a state's

---

[21] *Hess v. Pawloski*, 274 U.S. 352, 47 S. Ct. 632, 71 L. Ed. 1091 (1927).

[22] *Twining v. State of N.J.*, 211 U.S. 78, 29 S. Ct. 14, 53 L. Ed. 97 (1908).

[23] *State v. Barker*, 850 P.2d 885 (Kan. 1993).

[24] *See, e.g.*, *Memorial Hosp. v. Maricopa County*, 415 U.S. 250, 257-258, 94 S. Ct. 1076, 1081-1082, 39 L. Ed. 2d 306 (1974); *Dunn v. Blumstein*, 405 U.S. 330, 339-341, 92 S. Ct. 995, 1001-1002, 31 L. Ed. 2d 274 (1972); *Shapiro v. Thompson*, 394 U.S. 618, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969).

33

longtime citizens in a preferred manner as compared to newly arrived migrants. However, in this matter, Defendant is not being treated differently because of the timing of his migration. Defendant insists: "SORNA penalizes a distinct group of sex offenders for exercising their right to travel because they are then subject to federal prosecution for failing to register, whereas individuals who do not exercise their right to interstate travel are not as severely penalized." It is true that upon traveling to a new state, Defendant must register in the new state, while a convicted sex offender who remains within in a state need only remain properly registered. However, the Court fails to see a constitutional violation in this distinction. Where a person moves to a new state, he needs to obtain a new driver's license and vehicle registration: frankly, this licensing process can be an irritating hassle; however, the motor vehicle and licensing requirements certainly do not unduly infringe upon anyone's right to travel. Furthermore, signing up for utilities in some parts of this country is an exercise in frustration. Essentially, seemingly innumerable administrative requirements place burdens upon those who move.[25] Yet following Defendant's line of reasoning, this Court should strike down these pesky local administrative burdens, because they are an impediment to moving. In making these obviously limited analogies, the Court does not mean to minimize the substantial stigma that accrues from compliance with registration requirements. Nonetheless, such laws were appropriately passed by the legislative branch, and cannot be invalidated absent a showing of a specific constitutional violation.

In short, the essential part of the charged crime in this matter is the failure to register; the

---

[25]For instance, if a California resident, unfamiliar with the local tax system employed by Pennsylvania, moves from California to Pennsylvania, and consequently fails to fill out the numerous required local tax forms, such an individual could obviously be prosecuted for that failure.

34

Defendant's right to travel is incidental to this obligation, and not necessarily affected.[26] Such registration requirements place no greater burden on an interstate traveler than upon a convicted sex offender who travels to a different city within his home state, in a state where such a move triggers a re-registration or updating requirement.

Furthermore, the constitutional right of interstate travel is certainly not an absolute right; in this instance, the Court finds that the burden imposed upon Defendant's right to travel is necessary to achieve a compelling interest.    Obviously, all sex offender registration requirements are burdensome, and the consequences of such lists interfere greatly with a registrant's freedom to work and to participate in society; however, society, through its legislative processes, has decided again and again that it has a compelling and strong interest in preventing future sex crimes. The Court finds that this interest outweighs any burden imposed. Therefore, the Court rejects the Defendant's argument regarding the consequences of his right to interstate travel.

## G. SORNA, as Applied to Mr. Clayton, is not an *Ex Post Facto* Law

### 1. Introduction

According to allegations in the Indictment, Mr. Clayton's qualifying conviction occurred in 1992. Consequently, Defendant argues that he is essentially charged with an offense arising from conduct that occurred long prior to Congress' passage of the crimes set forth in 18 U.S.C. § 2250(a), and that the charge therefore violates the ex post facto clause. Doc. No. 49, pp. 46-48.

The government responds that Defendant's argument lacks merit and is based upon "an

---

[26]Ironically, implementation of systems based upon nationalized standards may actually facilitate both travel and the equally important right to not travel. Under the previously diverse state schemes, certain sex offenders may have felt confined or drawn to jurisdictions with more lenient registration systems. *See* Wayne A. Logan, *Criminal Justice Federalism and National Sex Offender Policy*, 6 *Ohio St. J. Crim. L. 51*, 119 (explaining that under a more uniform set of state systems, "registrants themselves would be deprived of any incentive theymight have to migrate in search of a less onerous regime, leading to greater stability of the registrant sub-population . . . ."

entirely faulty premise." Essentially, the government argues that Mr. Clayton is being prosecuted not for the 1992 offense, but for the more recent alleged offense of failing to register from September, 2007 through December, 2007. Doc. No. 54, pp. 56-59

The issue here is whether the application of SORNA to Mr. Clayton's circumstance caused an increase in punishment for his prior criminal acts.

## 2. Discussion

The Constitution prohibits Congress from passing of an *ex post facto* law. See U.S. Const.., Art. I, § 9. The ex post facto Clause prohibits laws that "retroactively alter the definition of crimes and increase the punishment of criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990). *Collins* explains:

> It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto.*

*Id.* at 42 (quoting *Beazell v. Ohio*, 269 U.S. 167, 169-170, 46 S. Ct., at 68-69).

The ex post facto clause only applies if the purpose of the legislation is to impose punishment. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266, 114 S. Ct. 1483, 128 L. Ed. 229 (1994) (discussing possible temptations for Congress to use retroactive legislation as a means of retribution against unpopular groups or individuals); *see also Smith v. Doe*, 538 U.S. 84, 102, 123 S. Ct. 1140, 155 L. Ed. 164 (2003).

Obviously, convicted sex offenders are not a popular group in our country; consequently, they could conceivably become an easy target of legislation grounded more upon pragmatic political

ambition than the public good. Defendant spends much of his argument addressing the punitive aspects of SORNA;[27] however, the Court believes that the weight of evidence shows that SORNA's primary purpose is to implement a civil and nonpunitive regulatory scheme, intended to create a "comprehensive national system for the registration" of sex offenders, "[i]n order to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators." 42 U.S.C. 16901.

Moreover, consideration of such aspects is mostly unnecessary, because any possible punitive consequences that may accrue to Mr. Clayton, do so not because of his 1992 crime, but for his alleged 2007 crime of failing to register. "[Section] 2250 only punishes an individual for traveling in interstate commerce and failing to register [as a sex offender]; the statute does not punish an individual for previously being convicted of a sex crime." *United States v. Hall*, 577 F. Supp. 2d 610, 615 (quoting *United States v. May*, 535 F.3d 912, 920 (8th Cir. 2008)); *see also United States v. Lawrance*, 548 F.3d 1329 (10th Cir. 2008); *United States v. Santana*, 584 F. Supp. 2d 941 (W.D. Tex. 2008).

Recently, the Seventh Circuit also considered this issue, and held that where the alleged failure to register occurred a sufficient time after the date that the Attorney General stated that SORNA would apply to those convicted prior to its passing, then prosecution under Section 2250(a)

---

[27]Defendant argues that the registration, notification, and penal provisions of SORNA differ in meaningful degree from those at issue in *Smith.* Defendant avers that the registration, notification, and penal provisions attach new, and as yet unidentified, legal consequences to Mr. Clayton's 1992 conviction, which obviously occurred long prior to SORNA's enactment. Defendant further argues that the additional requirements imposed by SORNA are punitive in both purpose and effect, in that the Act broadens the class of offenders affected, lengthens time periods for registration, creates varying classes of offenders, reduces time allowed to advise officials of changes, and increases penalties for violations. Defendant also avers that Congress' stated purpose in enacting SORNA was punitive. *See* 42 U.S.C. §16901 (declaring the purpose of the Act as designed "to protect the public from sex offenders and offenders against children, and in response to vicious attacks by violent offenders against the victims listed below, . . ."); *see also* 152 Cong. Rec. S8012-02, 2-5(2006) (statement of Sen. Hatch, describing the punitive aspects of the sex offender registration and notification provisions).

37

does not violate the *ex post facto* clause. *United States v. Dixon*, 551 F.3d 578, 584-87 (7th Cir.

2008). The discussion in *Dixon* is sufficiently on-point to quote at length:

> Dixon has one good argument, however, and that is that his conviction for failing to register violated the Constitution's ex post facto clause. This is part of the original Constitution, not the Bill of Rights, and is foundational of liberty. *Marks v. United States*, 430 U.S. 188, 191-92. It both enforces the principle that legislation is prospective, whereas punishment–the job assigned by the Constitution to the judicial branch–is retrospective, and gives people a minimal sense of control over their lives by guaranteeing that as long as they avoid an act in the future they can avoid punishment for something they did in the past, which cannot be altered.
>
> Dixon does not, and in light of *Smith v. Doe,* 538 U.S. 84 (2003), could not successfully, challenge the registration requirement itself as an ex post facto law. The requirement is regulatory rather than punitive. His argument is that all the conduct for which he was punished, not merely the sex crimes and the travel and the change of residence, occurred before the Sex Offender Registration and Notification Act was made applicable to him by the Attorney General's regulation.
>
> If all the acts required for punishment are committed before the criminal statute punishing the acts takes effect, there is nothing the actor can do to avoid violating the statute, and the twin purposes of the ex post facto clause are engaged. But by the same token as long as at least one of the acts took place later, the clause does not apply. *United States v. Campanale*, 518 F.2d 352, 364-65 (9th Cir. 1975); *United States v. Brown*, 555 F.2d 407, 416-17 (5th Cir. 1977). For in that case the defendant cannot be punished without a judicial determination that he committed an act after the statute under which he is being prosecuted was passed, and by not committing that act (provided of course that it is a voluntary act and so can be avoided by an exercise of volition) he would have avoided violating the new law.

*Id.*

In this matter, SORNA's registration requirement was made applicable to Mr. Clayton by the

regulation issued by the AG on February 28, 2007. The Indictment alleges that Mr. Clayton failed

38

to register from September, 2007 through December, 2007. The Court finds that the approximately six months from the end of February to September, 2007 constitute more than sufficient time for Mr. Clayton to comply with the requirement, and avoid the consequences that the government now seeks to impose upon him. Therefore, the Indictment cannot be dismissed for reasons of the ex post facto clause.

## IV. CONCLUSION

Having considered all of Defendant's grounds for dismissal of the indictment, this Court concludes that it finds no compelling reason for dismissing the Indictment. Like many Commerce Clause issues, this matter can be seen from numerous perspectives. Ultimately, the Court was not persuaded by Defendant's arguments as to the invalidity of the relevant statutes. Importantly, Congressional statutes must be presumed valid; in this matter, perhaps a close issue, that presumption weighs heavily. While the Court has taken seriously its obligation to fully and independently consider the issues, the Court also notes that other district court opinions within the Third Circuit, facing similar challenges from a similar procedural posture, all upheld SORNA.[28] Therefore, for all of the above reasons, the Court finds that the Indictment should not be dismissed for any of the reasons in Defendant's Motion; an appropriate Order follows.

---

[28]*See, e.g., United States v. Pendleton,* 2009 U.S. Dist. LEXIS 9708 (D. Del. Feb. 10, 2009); *United States v. Shenandoah,* 572 F. Supp. 2d 566 (M.D. Pa. 2008); *United States v. Reynolds,* 07-cr-412 (W.D. Pa. June 27, 2008) (Ambrose, J.).

## ORDER

And Now, this 16th Day of April, 2009, IT IS HEREBY ORDERED that Defendant's Motion

to Dismiss the Indictment is DENIED.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**